| June 27, 2011 LOUISIANA STATE PENITENTIARY | CHAPTER: SECURITY AND CONTROL | DIRECTIVE NO. 09.002 |
|---|---|---|
| | SUBJECT: USE OF FORCE | ACA STANDARD: 4-4084, 4-4084-1, 4-4090-92, 4-4173, 4-4199, 4-4200-04, 4-4206, 4-4281, 4-4399, 1-CTA-3A-16, 1-CTA-3A-17, -CTA-3A-19, 1-CTA-3A-20, 1-CTA-3A-23, 1-CTA-3A-24, 1-CTA-3B-08 |
| | REFERENCE: Department Regulation Nos.C-01-008, C-02-006, C-03-003; Penitentiary Directive Nos. 04.003, 09.007/B, 09.017, 09.021, 09.052, 13.019, 13.023,13.026 | |

PURPOSE: To provide guidelines to govern the use of force and its limitations and to describe prohibited activities. This policy is designed to assist employees in acting reasonably when confronted with situations requiring the use of force.

APPLICABILITY: All Louisiana State Penitentiary employees.

POLICY: It is the policy of Louisiana State Penitentiary that all reasonable steps be taken to minimize situations requiring the use of force by staff against offenders and to minimize the amount of force used in those situations. It is recognized, however, that force may be necessary to accomplish the mission and goals of the Department to provide for public safety, staff and offender safety, and the maintenance of stability within the institution. Employees will be provided with proper training and guidance in the use of force applications.

Procedures governing the use of force include both annual qualifications for staff likely to engage in activity that may involve the use of reasonable force and necessary certification under applicable regulating statutes for employees issued firearms or other security equipment. Security equipment utilized in use of force applications shall be in accordance with Penitentiary Directive No. 09.021 and Department Regulation No. C-01-008 and C-02-006. Only approved state-issued equipment will be used in the performance of official duties.

It is further the policy of Louisiana State Penitentiary that lethal weapons, less lethal weapons, electronic muscular disruption devices and restraints be used only by employees specifically trained in their use and when all available less drastic measures fail to accomplish control in handling group disturbances and subduing individuals. Said force employed shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

DEFINITIONS:

Electronic Muscular Disruption (EMD) Device: A device that utilizes electro-muscular disruption technology that disrupts the body's ability to communicate messages from the brain to the muscles, causing motor skill dysfunction. For the purpose of this regulation, EMD's

STATE'S EXHIBIT 4
Blumberg No. 5138

Payton v. Cain, et al
USM 11-726
71

Penitentiary Directive No. 09.002
June 27, 2011
Page 2 of 18


include only the electronic capture shield and electronic restraint belt system. (The TASER® is also considered an EMD; however, refer to Department Regulation No. C-02-006A "Use of TASER®" for specific procedures regarding use of the TASER®.)

Excessive Force:  Force is excessive when the resulting application of force is inappropriate to the circumstances either during an incident or in the aftermath of an incident.

Force:  The application of a technique, action or device to compel a change in the actions of another person, which usually will result in compliance with a desired behavior, submission to authority or to deescalate a threatening behavior.

Force Continuum:  Broad categories of force, in identifiable escalating/de-escalating stages of intensity, in response to an individual's actions. The categories are commonly identified as officer presence, verbal direction or command, soft empty-hand control, hand-held chemical spray or EMD devices, hard empty-hand control, batons and firearms. An individual's actions may be defined in broad categories including full compliance to commands, verbal uncooperativeness, passive resistance, active resistance, active aggression and aggravated active aggression (lethal force.)

Less Lethal Force:  Defensive techniques or weapons that do not normally nor are intended, when properly applied, to cause death or serious bodily injury.

Less Lethal Weapons:  Weapons designed to reduce the potential of causing serious physical injury or death. Use is restricted to situations where higher levels of force are unnecessary and lesser levels are inappropriate or ineffective. Less lethal weapons include:

1)    Chemical Agents and Munitions: Tear gas, mace spray or irritant dusts are chemical agents that cause irritation to the eyes, skin or respiratory system. Chemicals may be administered directly through a hand-held aerosol spray or at longer ranges by being fired or dispersed out of a launcher.

2)    Intermediate/Impact Weapons: Examples include batons and shields which are available options in the force continuum.

Lethal Force:  Any use of force reasonably calculated in the manner used to produce death or serious bodily injury.

Lethal Weapons:  Any weapon reasonably calculated in the manner used, to produce death or serious bodily injury.

Necessary Force:  Force used when all other options have been exhausted, unavailable or are not feasible.

Payton v. Cain, et al
USM 11-726
72

Penitentiary Directive No. 09.002
June 27, 2011
Page 3 of 18

Reasonable Force: Only that force which is reasonable and necessary under the particular circumstances to protect the public, staff, offenders, or others from bodily injury or only after other reasonable alternatives have been exhausted or it is determined that such alternative action(s) would be ineffective under the circumstances.

Restraints: Mechanical, electronic or other devices used in the force continuum to aid in the restriction of an individual's bodily movement for security purposes. (See Health Care Policy No. HC-29 "Utilization of Restraints for Medical and Mental Health Management Orders" for information concerning the use of restraints for medical and mental health purposes.)

Severe Mental Health Illness: A chronic or acute mental illness that impairs the offender's ability to maintain safety of self and others and maintain activities of daily functioning.

Severely Developmentally Delayed: An intellectual disability that impairs the offender's ability to provide self care or maintain their safety. In addition, this type of impairment may render the offender vulnerable to victimization by others.

See the attached Weapons List for items/devices/weapons authorized for use at LSP.

PROCEDURE:

A.    USE OF FORCE GUIDELINES

    1.    General Considerations:

        a.    The use of any type of force for punishment or reprisal is strictly prohibited.

        b.    Whenever possible, the determination to use force shall be made by the highest ranking supervisor in the immediate area.

        c.    Whenever possible, force shall not be used against offenders with severe mental health illness (SMHI) or who are severely developmentally delayed (SDD) before appropriate Medical or Mental Health personnel can be called to the scene. The Mental Health Director shall be responsible for maintaining a list of offenders with SMHI and SDD which shall be updated on a weekly basis or more often, if needed. This list shall be easily accessible to supervisory staff for use when needed.

        d.    Reasonable steps shall be taken to minimize the amount of force used.

Payton v. Cain, et al
USM 11-726
73

Penitentiary Directive No. 09.002
June 27, 2011
Page 4 of 18

e. Employees will not carry security equipment on their person unless authorized by the Warden or his designee. Restraining devices may be carried by supervisory personnel while on duty. Handcuffs must be worn in an approved attachable handcuff case.

f. Individual units may maintain small amounts of security equipment in areas inaccessible to offenders.

g. Assigned trip officers shall be authorized to use chemical agents and the ASP in order to prevent an escape or to stop a disturbance while escorting offenders outside institutional grounds.

h. With the exception of extreme emergencies, firearms are not permitted inside a secure compound or area unless authorized by the Warden.

2. Elements to Consider in the Review of Use of Force Incidents

a. The extent of the injury suffered.

b. The need for the application of force.

c. The relationship between the need and the amount of force used.

d. The threat reasonably perceived by the responsible supervisor

e. Any efforts made to temper the severity of a forceful response.

3. For Use of Less Lethal Force:

a. Less lethal force is force which normally causes neither death nor serious bodily injury.

b. Physical force, chemical agents, EMDs, intermediate/impact weapons, or less lethal ammunitions and devices, and canine units may be used only in the following instances:

1) Prior to the use of lethal force:

a) To prevent the commission of a felony, including escape.

b) To prevent an act which could result in death or serious bodily injury to one's self or to another person.

Payton v. Cain, et al
USM 11-726
74

Penitentiary Directive No. 09.002
June 27, 2011
Page 5 of 18

       2)     To defend one's self or others against any physical assault.

       3)     To gain offender compliance when other less lethal force options within the force continuum have failed, are clearly inappropriate and/or ineffective.

       4)     To prevent commission of a misdemeanor.

       5)     To prevent serious damage to property.

       6)     To enforce institutional rules.

       7)     To prevent or quell a riot.

c.     The amount of physical force applied shall be appropriate to the amount of resistance.  Once compliance starts, escalation of force stops.

4.     For Use of Lethal Force:

a.     Lethal force is force that in the manner used, is capable of causing death or serious physical injury.

b.     It may be used only as a last resort and then only in the following instances:

       1)     To prevent the commission of a felony, including escape.

       2)     To prevent an act which could result in death or severe bodily harm to one's self or another person.

5.     For use of the following:

a.     Mechanical and Flex Cuff Restraints (see Penitentiary Directive No. 09.007/B).

b.     Extreme Restraints (see Penitentiary Directive No. 10.002).

c.     Chemical Agents, Intermediate/Impact Weapons and Other Less Lethal Weapons (see Section E below).

d.     Electronic Muscular Disruption Devices (see Section F below).

Payton v. Cain, et al
USM 11-726
75

Penitentiary Directive No. 09.002
June 27, 2011
Page 6 of 18

          e.      Lethal Weapons (see Section B below).

          f.      Canine Units (see Section G below).

B.     USE OF LETHAL WEAPONS

    1.     All staff, when assigned weapons, shall use the following procedure in the prevention of escapes and in situations described in Section A, 4.

    2.     Lethal weapons should be utilized only as a last resort and only as authorized herein.

    3.     In the utilization of firearms, the following procedures shall be followed:

          a.      A verbal warning to cease actions (if feasible). In the case of an escape, this should occur when an unauthorized offender(s) gets within 10 feet of a perimeter fence.

          b.      Warning shot (if feasible) to ensure that the offender is absolutely aware of the seriousness and probable consequences of his actions.

              IMPORTANT NOTE: The only exception of the provisions in Section B, 3, a and b would be when the circumstances require immediate action to protect life or stop an escape in progress where a verbal warning or warning shot is not practical. Warning shots may not be fired where it is foreseeable that a member of the public may be endangered.

          c.      Shoot to disable (render offender incapable of continuing with action; which prompts the use of lethal force).

    4.     Officers should be aware of escape attempts via aircraft.

          a.      Officers should contact the Control Center of the approach of low flying or unauthorized aircraft.

          b.      The Control Center shall advise appropriate tower officers of any expected aircraft.

          c.      If it is suspected an escape attempt is being made by an aircraft, the officer should gather as much information as possible as to the craft's identifying markings, number of occupants and possible number of offenders involved.

Payton v. Cain, et al
USM 11-726
76

Penitentiary Directive No. 09.002
June 27, 2011
Page 7 of 18

      d.     If an officer is fired upon by the aircraft or if the occupants are in the act of committing a felony, the officer may fire to protect himself, attempt to disable the craft, and to prevent its departure.

      e.     The Control Center and highest ranking officer in the area shall notify the appropriate authorities of unapproved aircraft as soon as possible.

5.    After Use

      a.     When a weapon has been utilized, the affected individual(s) that suffered the wound shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

      b.     Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

      c.     In accordance with Department Regulation No. C-01-008 "Firearms and Weaponry Training," a Shooting Review Panel appointed by the Secretary shall review the circumstances surrounding each incident where an offender or other person is shot by departmental staff and shall make recommendations as necessary. The meetings shall occur at least quarterly but may occur on an incident-by-incident basis at the discretion of the Chief of Operations.

      d.     All instances in which lethal weapons are used shall be reported in accordance with Section F of this regulation.

6.    Armed Duty Post

      a.     With the exception of those offenders being transported outside the institution, armed duty posts shall be positioned in areas inaccessible to offenders. Armed guards shall position themselves at a minimum of seventy-five (75) feet from all offenders.

      b.     Armed escorts should exercise extreme caution during any movement of offenders in the course of outside trips and farm line operations. Mass movement of offenders from a security perimeter to another area requires armed escorts during hours of darkness or at time designated by the Warden.

      c.     Offenders are not allowed in the Armory or in areas where officers receive and/or return security equipment.

Payton v. Cain, et al
USM 11-726
77

Penitentiary Directive No. 09.002
June 27, 2011
Page 8 of 18

C.    USE OF CHEMICAL AGENTS, INTERMEDIATE/IMPACT WEAPONS, EMD's AND OTHER LESS LETHAL WEAPONS

1.    Chemical agents, intermediate/impact weapons, or less lethal munitions and devices shall not be used as punishment under any circumstances and may be used against an offender or a group of offenders only in the following circumstances:

a.    To quell a riot and/or prevent loss of life, serious injury to person(s), and/or extensive destruction of property,

b.    To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution, or

c.    To regain control of the institution or a part of it.

2.    The use of chemical agents, intermediate/impact weapons or less lethal munitions and devices is considered a use of force.  When used, only the minimum amount of force necessary to control the situation shall be used.  Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

3.    A determination for corporate or mass use of chemical agents, intermediate/impact weapons or less lethal munitions and devices shall be made by the Warden or designee. (who should be the highest ranking supervisor on duty in the immediate area where the incident is occurring).

If the electronic capture shield (EMD) is to be used, the highest ranking official on duty in the immediate area where the incident is occurring will designate the officer who will use the shield. Only officers who have been trained in the proper use of the electronic capture shield may be designated to use the shield.

4.    Chemical agents, intermediate/impact weapons, EMD's or less lethal munitions and devices shall not:

a.    Be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination for use under these circumstances, or against an individual offender shall be made by the highest ranking supervisor on duty in the area.

Payton v. Cain, et al
USM 11-726
78

Penitentiary Directive No. 09.002
June 27, 2011
Page 9 of 18

     b.    Be used on those offenders who are incapable of responding to the commands and orders being given to them by staff (e.g., during epileptic seizures, etc.).

     c.    Whenever possible under prevailing circumstances, be used against an offender who is assigned to a Mental Health Treatment Unit until a qualified medical or mental health worker is present and attempted to control the situation, unless it is necessary to prevent loss of life, serious injury to person(s), or extensive property damage.

         1)    The medical or mental health worker must respond, assess, and attempt an intervention prior to the use of a chemical agent or the Cell Entry Team.

         2)    If the intervention is not successful, the medical or mental health worker may authorize the use of chemical agents or the Cell Entry Team.

         3)    In such cases the medical or mental health worker will remain present at the head of the tier to monitor the offender's behavior during the use of chemical agents or Cell Entry Team.

         4)    The medical or mental health worker will document the assessment and the success or failure of the intervention, time of incident, and follow-up treatment.

         5)    When immediate action is required, consultation between Mental Health Clinician and the Medical Director will occur as soon as reasonably possible but no later than 72 hours to review the appropriateness of the action.

5.    When an offender or offenders are creating a disturbance, the officer on duty will attempt to handle the problem by ordering the offender(s) to cease the disturbance. If the offender(s) refuses and continues the disruptive behavior, the officer will then call his supervisor.

6.    When the supervisor arrives, he will take charge of the situation and then order the offender(s) to cease the disturbance. If the offender(s) refuses the order, he will then order the offender(s) to come to the bars so that he may be properly restrained and removed from his cell to be placed in administrative segregation or the appropriate area. This procedure also applies to offenders already housed in administrative segregation.

Payton v. Cain, et al
USM 11-726
79

Penitentiary Directive No. 09.002
June 27, 2011
Page 10 of 18

7.    If these efforts fail to control the situation and the offender(s) continues the disruptive behavior which, in the opinion of the highest ranking security supervisor on duty in the immediate area where the incident is occurring, may lead to loss of life, serious injury to person(s), extensive destruction of property, or a serious situation which may jeopardize the safety, security and good order of the facility, the supervisor may then use only the minimum amount chemical agent necessary to subdue the offender(s).

8.    If the highest ranking security supervisor on duty in the immediate area where the incident is occurring determines that chemical agent will be used, he will personally apply the chemical agent. Only the minimum amount necessary to control the situation will be used. It is the supervisor's responsibility to ensure that the chemical agent is not used as a form of punishment or on an offender(s) who is physically incapable of responding to commands being given to him.

9.    The offender(s) will then be given orders to come to the bars to be handcuffed. If the offender complies, appropriate restraints will be applied; he will be removed from the cell and offered a change of clothing and to shower. The offender(s) and affected staff will then be examined and treated, per established protocols, by an EMT or other qualified health care provider.

10.    In the event that the use of chemical agent has no effect in controlling the situation as described above, the Control Center will be notified to assemble a cell entry team to subdue the offender(s).

11.    The cell entry team leader will verbally inform the offender that the EMD will be used to subdue him.

12.    The cell entry team leader or another trained officer designated by the team leader will arc/test the EMD in the offender's presence to show that electricity is being used. The team leader will again give the offender the opportunity to come to the bars to be restrained.

13.    If the offender still refuses to come to the bars to be restrained, the team leader in charge of the situation will utilize the EMD and riot helmet, or designate another qualified officer to do the same. The on/off switch will be placed in the "on" position, and the cell entry team will enter the cell.

14.    After the team has entered the cell, the officer utilizing the EMD and riot helmet will approach the offender and place the shield upon him. <u>Always use the minimum force necessary to control the situation.</u>

Payton v. Cain, et al
USM 11-726
80

Penitentiary Directive No. 09.002
June 27, 2011
Page 11 of 18

15.  After the burst of electricity from the EMD has been administered, maintain cover with the shield. Have the offender move or physically move the offender to be restrained. If the offender physically resists, another burst of electricity may be applied with the electronic device. While the offender is being restrained, maintain cover with the shield. This procedure may be repeated only if necessary. The offender(s) will then be examined and treated, per established protocols, by an EMT or other qualified health care provider. Only minimum force will be used.

16.  The only person authorized to use chemical agent or to order the cell to be entered to subdue an offender(s) is the highest ranking security supervisor on duty in the immediate area where the incident is occurring. Under no circumstances will an officer or officers use chemical agents, intermediate/impact weapons, or less lethal munitions and devices to subdue an offender(s) without the supervisor being present.

17.  ASP

   a.  On approval by the Warden, security supervisors of segregated areas shall be authorized to use the ASP (expandable tactical baton) in the performance of assigned duties. The ASP shall be stored in a proper storage compartment until such time as use is required. The ASP shall be inventoried.

   b.  Trip officers shall be authorized to carry the ASP while escorting offenders outside the institution. The ASP shall be signed out from the Armory as part of regular security equipment issue.

   c.  Only those staff who have been properly trained and certified shall be permitted to use the ASP.

18.  After Use

   1.  When chemical agents, intermediate/impact weapons or less lethal munitions and devices have been used

      a.  Affected individuals will be permitted to wash their face, eyes or other exposed skin areas, as soon as possible after the situation has been brought under control, and the individual will be examined by qualified medical personnel.

      b.  Staff may be referred to medical personnel as appropriate based on the circumstances.

Payton v. Cain, et al
USM 11-726
81

Penitentiary Directive No. 09.002
June 27, 2011
Page 12 of 18

      2.     All instances in which chemical agents, intermediate/impact weapons or less lethal munitions or devices are used shall be reported in accordance with Section F.

D.    USE OF ELECTRONIC MUSCULAR DISRUPTION DEVICES (EMD's)

    1.    For the purpose of this Section, EMD's shall include only the electronic capture shield and electronic restraint belt system. (Refer to Department Regulation <u>No. C-02-006A "Use of Taser®" for specific procedures regarding use of the Taser®.)</u>

        The use of the electronic capture shield is authorized for use at LSP as described in Section C, 10-16.

    2.    EMD's <u>shall not</u>:

      a.    Be used as punishment under any circumstances;

      b.    Be used continuously and unjustifiably used against an offender;

      c.    Be used on those offenders who are incapable of responding to the commands and orders being given to them by the staff (e.g. during epileptic seizures, etc.)

      d.    Be used against any individual known to have been exposed or subjected to chemical agents containing flammable substances or any other product(s) using a potentially flammable propellant until a minimum of five minutes has passed allowing for evaporation of the propellant or unless the individual has completed the de-contamination process required after such exposure;

      e.    Be used around known sources of flammable gases, liquids or solids;

      f.    Whenever possible under prevailing circumstances, be used against offenders assigned to an area designated as a Mental Health Treatment Unit until a qualified medical or mental health worker is present and has attempted to control the situation unless it is necessary to prevent loss of life, serious injury to person(s) or extensive property damage.

    3.    EMD's <u>may be</u> used against an offender or a group of offenders only in the following circumstances:

      a.    To quell a riot and/or prevent loss of life, serious injury to person(s) and/or extensive destruction of property;

Payton v. Cain, et al
USM 11-726
82

Penitentiary Directive No. 09.002
June 27, 2011
Page 13 of 18

      b.    To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or

      c.    To regain control of the institution or part of it.

4.    The use of EMD's is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

5.    Electronic Capture Shield

The electronic capture shield shall not be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination to use the electronic capture shield under these circumstances, or against an individual offender, shall be made by the highest ranking supervisor on duty in the area where the incident is occurring.

6.    Electronic Restraint Belt

      a.    Use of the electronic restraint belt shall be made by a designated supervisor and may be used in accordance with Penitentiary Directive No. 09.017, Transportation of Offenders. Such approval shall be obtained in advance, if possible.

          1)    When transporting or moving an offender within or outside of the institution in accordance with institutional procedures;

          2)    When transporting an offender whose medical condition is not conducive to full use of restraints;

          3)    When the past history and/or present behavior of the offender creates the possibility of bodily harm to any person, property damage or escape;

          4)    During court appearances when the Court issues an order that the other restraints be removed (see Department Regulation No. C-03-003 "Escorted Absences" for additional information) or other such activities where the use of restraints that are not visible or prominently observable is preferred.

      b.    The Medical Director or his designee should be consulted to be medical clearance for electronic restraint belt use and the electronic restraint belt should never knowingly be used on the following offenders:

Payton v. Cain, et al
USM 11-726
83

Penitentiary Directive No. 09.002
June 27, 2011
Page 14 of 18

1) Elderly offenders over 65 years of age;

2) Wheelchair bound;

3) Severely ill offenders:

    a) Cardiac: Offenders with pacemakers or defibrillators, coronary artery disease or congestive heart failure;

    b) Liver: Offenders with cirrhosis and swelling of the legs or abdomen;

    c) Kidney: Offenders on dialysis;

    d) Stroke: Offenders that have trouble ambulating and therefore, use a cane or walker;

    e) HIV: Offenders with a CD4 count of 50 or less;

    f) Lung: Offenders with chronic obstructive pulmonary disease (COPD) or asthma bad enough to require more than one inhaler for treatment;

    g) Cancer: Offenders with a current diagnosis of cancer.

d. Except as stated in D, 6, b the electronic restraint belt may also be otherwise used at the discretion of the Warden or designee in accordance with the provisions of this Section.

e. After Use

1) When EMD's have been used, affected offender(s) that suffered the electrical shock(s) shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

2) Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

3) All instances in which EMD's are used shall be reported in accordance with Section F of this regulation.

Payton v. Cain, et al
USM 11-726
84

Penitentiary Directive No. 09.002
June 27, 2011
Page 15 of 18

E.    CANINE UNITS

Canine units shall be available to conduct building searches for offenders, to assist in escape procedures, to protect officers and others from serious bodily injury and death, to control crowds/riots, and to detect the presence of concealed contraband.

1.    The Warden or his designee shall be responsible for determining whether a situation justifies canine use and appropriate tactical measures that should be taken.

2.    Canines shall not be handled or given commands by anyone other than the assigned handler and/or his alternate.

3.    Unless otherwise approved by the Warden or his designee, canines shall be used in a leashed condition at all times.

4.    Canines may be used between the fences to provide perimeter security, when deemed necessary by the Warden or his designee. In the event that canines are utilized in providing perimeter security, one officer will provide roving security.

F.    REPORTING REQUIREMENTS

1.    All situations involving the use of force, including the discharge of any firearms, use of chemical agents and use of other security equipment (except for training purposes) must be documented to establish the identity of personnel and offenders involved and to describe the nature of the incident. In reporting instances, the standard Unusual Occurrence Report (UOR) shall be submitted to the Warden or designee as soon as possible after the incident, but no later than the end of tour of duty and shall be reviewed by the Warden or designee. Each time the electronic device is used the Armory will provide a Use of Electronic Device Documentation (Form 09.002-A) to be completed and forwarded to the appropriate areas.

NOTE: This review does not include incidents where mechanical restraints are applied to an offender in a calm, non-hostile situation where no other use of force was required, i.e., instructing an offender to allow an officer to apply handcuffs in order to be escorted to the cell block following a rule violation.

2.    The Warden or designee shall investigate all allegations of improper use of force and shall notify other authorities, as appropriate.

3.    Reporting in accordance with Department Regulation No. C-05-001 "Activity Reports/Unusual Occurrence Reports Operational Units" is required.

Payton v. Cain, et al
USM 11-726
85

Penitentiary Directive No. 09.002
June 27, 2011
Page 16 of 18

4.    Administrative review of use of force incidents shall be conducted in accordance with the provisions of Department Regulation Nos. C-01-008 "Firearms and Weaponry Training" and C-05-001A "Serious Unusual Occurrence Review Panel."

G.    SECURITY EQUIPMENT – ACCESS, STORAGE AND INVENTORY

1.    The Armory is responsible for the maintenance and distribution of security equipment to all units, except canine units.  Only personnel designated by the Assistant Warden IV/Security shall have access to the Armory's security equipment storage area.  The Armory is responsible for the issuance of security equipment to authorized personnel for the performance of official duties, e.g., field officers, trip officers, roving security, tower officers, tactical unit personnel and chase team personnel.  Any other issuance of security equipment shall be at the discretion of the Warden or his designee.

2.    The Armory shall issue security equipment to authorized personnel such as shift supervisors and senior security officers of designated areas for use within the institution. Issuance of these items shall be documented by the issuing officers and signed by the receiving officer.

3.    The Armory shall maintain an inventory of all weapons, ammunition, chemical agents, and related security devices.  A written record will be maintained by Armory personnel regarding the issuance of any equipment in order to determine accountability and responsibility.  This report, which will be submitted to the Assistant Warden IV/Security at least monthly, will detail weapon conditions and list expiration dates of other equipment.

4.    At the beginning of each shift, Armory personnel will perform a test of the electronic devices.  The results of the tests will be documented.  If the electronic device fails the test, the Armory officer will notify the Communications Department to arrange for repairs.

5.    Cellblock units will store chemical agents in a locked cabinet. Chemical agents stored in the cabinet will be inventoried daily. At the beginning and the end of the shift, the Cellblock supervisor will log the weight of each can in the logbook.

6.    In the event that chemical agents are used, the name and number of the offender the agent was used on will also need to be logged in the logbook. The can will be weighed after the incident and the new weight noted in the logbook.

7.    It is the responsibility of each respective Assistant Warden to ensure that expired agents and empty cans are sent to the Armory for replacement.

Payton v. Cain, et al
USM 11-726
86

Penitentiary Directive No. 09.002
June 27, 2011
Page 17 of 18

H.    LAW ENFORCEMENT/VISITOR WEAPONS

1.    Unless authorized by the Warden, law enforcement officers and visitors are not permitted to carry their firearms inside the confines of the prison.

2.    Perimeter gate security personnel will secure weapons in a secure storage locker and issue receipts to the owners of the weapons.

I.    ABUSE OF OFFENDERS, CORPORAL PUNISHMENT, OR USE OF UNNECESSARY OR EXCESSIVE FORCE

1.    No employee shall abuse an offender for any reason.  Violations are actionable under the Corrections Services Employee Manual, Employee Rules and Disciplinary Procedures.

2.    The force used shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

3.    Necessary force may include the use of physical contact, chemical agents, intermediate/impact weapons and other less lethal weapons and munitions, mechanical restraints, electric muscular disruption devices, and firearms.

4.    The following uses of force are prohibited: corporal punishment, unnecessary force, and excessive force.

J.    TRAINING

1.    All correctional officers and other appropriate employees shall be provided a copy of the current use of force policy and thoroughly trained pursuant to Department Regulation No. C-01-008 before being authorized to carry any weapon.  Authorized employees shall be instructed in accordance with the regulation, including policies and procedures, and shall be provided with necessary training and retraining at least annually.  Employees shall adhere to the principles and practices of the regulation during training sessions.

2.    All Corrections Security Officers will be trained in approved methods of self-defense and the use of force continuum.

3.    Only those authorized employees who have successfully completed specialized training and/or qualification in the operation and use of less lethal and/or lethal weapons may use such weapons.

Payton v. Cain, et al
USM 11-726
87

Penitentiary Directive No. 09.002
June 27, 2011
Page 18 of 18

4.    All instructors authorized to train others in the use of firearms, use of chemical agents, and use of force are certified by a competent authority to conduct such training.    All chemical agent instructors must be trained in the treatment of individuals exposed to a chemical agent.

Burl Cain, CCE
Warden

Attachment:        DPS&C Weapons List

Form:        LSP-09.002-A        Use of Electronic Device Documentation

This policy supersedes Penitentiary Directive No. 09.002 dated February 22, 2008.

Payton v. Cain, et al
USM 11-726
88

Department Regulation No. C-01-008 and C-02-006
20 December 2010

## WEAPONS LIST

The following weapons only are approved for purchase without authorization from the Secretary or designee.

### MECHANICAL AND FLEX CUFF RESTRAINTS
### (See Section 10. of Department Regulation No. C-02-006)

### Applies to Department Regulation No. C-02-006 "Use of Force" ONLY

Legirons

Handcuffs (with standard case)

Flexcuffs

Restraint Belt with or without black box

Grip Restraint System

Side Restraints

Leather Belt Restraints

Leg and Arm Braces

Soft Wrist and Ankle Restraints

The Tube

Facial Protective Mask

### EXTREME RESTRAINTS
### (See Section 11. of Department Regulation No. C-02-006)

Restraint Chair

Straightjacket

### CHEMICAL AGENTS, INTERMEDIATE IMPACT WEAPONS
### AND OTHER LESS LETHAL WEAPONS
### (See Section 12. of Department Regulation No. C-02-006)

1.     **Chemical Aerosols**

Capstun - OC

Payton v. Cain, et al
USM 11-726
89

**Department Regulation Nos. C-01-008 and C-02-006**
**20 December 2010**
**Page Two**

Deep Freeze – OC/CS

Freeze +P – OC/CS

Clear Out – OC/CS

Punch II - OC

Body Guard - OC

Sabre Red - OC

Fox 5.3 - OC

First Defense HV Stream – OC

**2.    Chemical Grenades**

HC Smoke/CN/CS

CN/CS Rubber Ball

CN/CS/OC Blast Dispersion

**3.    Chemical Projectiles (HC, CN, CS)**

Short/long range

Blast/Muzzle dispersion

Barricade Flight/Skate Shell - Deleted 11/15/06 - May Utilize Existing Inventory Only

Barricade Penetrating Round

Flite Rite - Deleted 11/15/06 - May Utilize Existing Inventory Only

Skat Shell

Stinger cartridge and product - Deleted 4/20/99 - May Utilize Existing Inventory Only

TKO Fragible Slug - Deleted 11/15/06 - May Utilize Existing Inventory Only

Door Breaching Round

Payton v. Cain, et al
USM 11-726
90

**Department Regulation Nos. C-01-008 and C-02-006**
**20 December 2010**
**Page Three**

12 Gauge Rubber Pellets - Deleted 4/20/99 - May Utilize Existing Inventory Only

Multiple Baton Shell - Deleted 4/20/99 - May Utilize Existing Inventory Only

Fogger Additives

Pepper Fogger Machine/Smoke Generator

Fox mixes/CN/CS/OC

Flush mix

Insert Screening Smoke

4.      **Chemical Agent Launching Systems and Chemical Dispersants**

Ispra Israeli gas gun and CS Irritant

Israeli Protecto-jet and Solution

37 mm Caliber: gas gun/launcher (Def Tec, Smith & Wesson, Ferret, Federal and Penn Arms)

1.5 Caliber: gas gun - Deleted 11/15/06 - May Utilize Existing Inventory Only

40 mm Caliber: gas gun/launcher (Def Tec, Fed Labs, Smith & Wesson, Ferret and Federal)

5.      **Intermediate/Impact Weapons**

24" riot batons

36" riot batons

PR 24 batons

Expandable batons

Concave riot shield

Convex riot shield

Bullet Resistant Shield

Payton v. Cain, et al
USM 11-726
91

**Department Regulation Nos. C-01-008 and C-02-006**
**20 December 2010**
**Page Four**

6.    **Other Less Lethal Weapons**

Stinger Grenade, Rubber Pellet and Rubber Pellet Combo CS (Mandatory)

12 Gauge Projectiles (Low Velocity Rubber Pellet and Rubber Sabot and Combo CS) (Mandatory)

Bean Bag Rounds for 12 Gauge and 37 mm Caliber (Mandatory) and 40 mm Caliber (Discretionary)

Multiple Baton Round Wood or Foam Rubber 37/38 mm Caliber (Mandatory) and 40 mm Caliber (Discretionary)

SA 200 Pepper Launcher Semi Automatic Rifle (Discretionary)

Pepperball rounds (OC powder filled, Inert powder filled, Inert liquid filled) (Discretionary)

12 Gauge Blank Launching Rounds (Discretionary)

Distraction Device (Concussion Grenade and 12 Gauge and 40 mm Caliber) (Discretionary)

Stinger Cartridges for 37/38 mm Caliber (Discretionary) and 40 mm Caliber (Discretionary)

Flexible Baton 12 Gauge close range (10 to 50 feet) (Discretionary)

Flexible Baton 37 mm Caliber and 40 mm Caliber close range (10 to 65 feet) (Discretionary)

Grab Nets (Discretionary)

Spike System (Discretionary)

Canines (Discretionary)

**ELECTRONIC MUSCULAR DISRUPTION DEVICES**
**(See Section 13. of Department Regulation No. C-02-006)**

Electronic Capture Shield (Mandatory)

Electronic Nova RACC Restraint Belt System (Mandatory)

TASER® and cartridges (Applies to Department Regulation No. C-02-006A "Use of TASER®" ONLY)

Payton v. Cain, et al
USM 11-726
92

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Five

## LETHAL WEAPONS
### (See Section 14. of Department Regulation No. C-02-006)

1.　Handguns

.40 Caliber: Smith and Wesson, Glock, Ruger, Sig Sauer, Springfield Armory and Kimber Arms

.38 Caliber: Smith and Wesson, Colt and Ruger

.357 Caliber: Smith and Wesson, Colt, Dan Wesson and Ruger

9mm Caliber: Smith and Wesson, Glock, Ruger, Sig Sauer, Springfield Armory and Kimber Arms

.45 Caliber: Ingram Model 6, Springfield Armory and Kimber Arms

.357 Sig Caliber: Sig Sauer

(Or equivalent caliber/function as may be available on state contract under different brand names.)

2.　**Rifles**

.223 Caliber: Colt AR-15 SP-1, Ruger Mini-14 and Bushmaster A3 M4 Patrolman

.30 Caliber: Universal M-1 carbine

30-30 Caliber: Marlin #336C and Winchester #94 - Deleted 10/31/02 - May Utilize Existing Inventory Only

30-06 Caliber: Winchester #70 and Remington #700

.300 Caliber: Winchester #700 Magnum Caliber

.308 Caliber: Remington #700

.243  Caliber: Remington #700

9 mm Caliber, 10 mm Caliber and 40 Caliber: Heckler and Koch MP5

45 ACP Caliber: Car 45 Olympic Arms

(Or equivalent caliber/function as may be available on state contract under different brand names.)

Payton v. Cain, et al
USM 11-726
93

**Department Regulation Nos. C-01-008 and C-02-006**
**20 December 2010**
**Page Six**

3.    **Shotguns**

12 gauge Winchester #1200

12 gauge Mossberg #3000

12 gauge Remington #870 and #1100

12 gauge Ithaca #37

(Or equivalent gauge/function as may be available on state contract under different brand names.)

4.    **Ammunition**

Appropriate ammunition may be purchased for each weapon listed herein.

Payton v. Cain, et al
USM 11-726
94

LSP-09.002-A
July 2, 2004

LOUISIANA STATE PENITENTIARY
# USE OF ELECTRONIC DEVICE DOCUMENTATION

| DATE: | | TIME: | |
|---|---|---|---|
| OFFENDER(S) | | DOC # | |
| | | | |
| | | | |
| | | | |

**CIRCUMSTANCES REQUIRING USE OF ELECTRONIC DEVICE**

| SUPERVISOR AUTHORIZING USE OF ELECTRONIC DEVICE: | |
|---|---|
| EMPLOYEE OPERATING ELECTRONIC DEVICE: | |
| OTHER EMPLOYEES ENTERING CELL: | |
| | |
| | |
| OTHER WITNESSES: | |

**COMMENTS ABOUT ACTUAL USE OF ELECTRONIC DEVICE**
(How many seconds used, number of times used, effects on the offender, any effects on employees, problems with the device, etc.)

**EMT OR OTHER MEDICAL PERSONNEL WHO EXAMINED OFFENDER(S)
AFTER USE OF ELECTRONIC DEVICE**

This form is to be completed each time the Electronic Device is used. Unusual Occurrence Reports will also be prepared and attached. Distribution of reports is to follow the same method used to distribute UORs with an additional copy going to Medical Records.

Payton v. Cain, et al
USM 11-726
95